881 F.2d 1070
 28 Fed. R. Evid. Serv. 832
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Russell Arthur ROY, Defendant-Appellant.
 No. 88-5178.
 United States Court of Appeals, Fourth Circuit.
 Argued May 12, 1989.
Decided July 31, 1989.
 
 Hunt Lee Charach, Assistant Federal Public Defender for appellant.
 John Kirk Brandfass, Assistant United States Attorney (Michael W. Carey, United States Attorney on brief) for appellee.
 Before K.K. HALL, Circuit Judge, FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation, and GLEN M. WILLIAMS, Senior United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant, Russell Arthur Roy, was convicted of one count of possessing a firearm after prior conviction of a felony, 18 U.S.C. app. 1202(a)(1). Asserting that his conviction was based upon erroneously admitted evidence, Roy now seeks review by this court. We reverse.
 
 I.
 
 2
 On February 6, 1985 Bureau of Alcohol, Tobacco and Firearms (BATF) Special Agent Richard Kemp visited the home of Roy's father. Kemp unsuccessfully attempted to purchase cocaine from Roy. Kemp saw Roy lift a .22 caliber rifle to his shoulder. The following day, Kemp learned that Roy was a convicted felon.
 
 
 3
 On March 5, 1985, Kemp obtained a search warrant for the home of Roy's father. BATF agents Larry Sparks and Robert Farrar executed the warrant on March 6, 1985. Sparks reported that they recovered two firearms, a Marlin .22 caliber rifle and a J.C. Higgins 16 gauge shotgun. Roy was not indicted until April 19, 1988. The indictment was for illegally possessing firearms on or about March 6, 1985.
 
 II.
 
 4
 Roy alleges that the district court erred in admitting evidence concerning his uncharged misconduct of February 6, 1985. Months in advance of trial, Roy made a motion requesting that the government notify him if it intended to use similar act (Fed.R.Evid. 404(b)) evidence. The government responded that it would notify Roy, prior to trial, if it intended to use such evidence.
 
 
 5
 The government never notified Roy of such an intention. Accordingly, Roy made a motion in limine seeking to exclude similar act evidence. The morning of the trial, the government again asserted that it was not going to use similar act evidence. Based upon the government's representation, the district court found it unnecessary to rule on Roy's motion in limine.
 
 
 6
 During the trial, the government called BATF Agent Kemp to testify concerning the February 6, 1985 incident. Defense counsel objected on the ground that such evidence was 404(b) evidence. The court overruled the objection stating that the evidence was "part of the res gestae" and "not 404(b) evidence...." On appeal, Roy maintains that these rulings were erroneous. We agree.
 
 
 7
 The district judge apparently believed that evidence cannot be both 404(b) evidence and res gestae. Res gestae, however, is simply one category of 404(b) evidence.[1] Therefore, labeling evidence "res gestae" does not remove it from the domain of Fed.R.Evid. 404(b).
 
 
 8
 Given that Roy was charged with possession of a firearm, and that Agent Kemp testified that he had seen Roy with a firearm one month earlier, the district court erred in admitting the testimony. This type of similar act evidence is precisely what is contemplated by Fed.R.Evid. 404(b). Roy was unprepared to meet similar act evidence solely due to the government's assertion, to him and to the court, that it would not be offered. Allowing the government to use such evidence over objection, changed the rules in the middle of the game, deceived Roy, and was unfair and prejudicial.
 
 
 9
 Roy also contends that the evidence regarding the February incident was not part of the res gestae of the case. This is significant because similar act evidence cannot be used unless it is used for a proper purpose. Fed.R.Evid. 404(b); United States v. Masters, 622 F.2d 83 (4th Cir.1980). The only proper purpose advanced by the government in this case was that the "similar act" was part of the res gestae of the charged offense. Therefore, if Roy's act of February 1985 is not part of the res gestae of the case, the government advanced no proper purpose for the admission of that evidence.
 
 
 10
 Evidence of similar wrongful acts is not admissible to "prove the character of a person in order to show that he acted in conformity therewith." Fed.R.Evid. 404(b). Evidence of similar wrongful acts is admissible, however, if "relevant for a purpose other than showing the character or disposition of the defendant." United States v. Masters, 622 F.2d 83, 86 (4th Cir.1980). One purpose for which similar acts evidence may be offered is to "complete the story" of the charged offense. Id. As stated earlier by this court
 
 
 11
 One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence 'furnishes part of the context of the crime' or is necessary to a "full presentation' of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its 'environment' that its proof is appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae" ' or the 'uncharged offense is "so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ..." [and is thus] part of the res gestae of the crime charged.' And where evidence is admissible to provide this 'full presentation' of the offense, '[t]here is no reason to fragmentize the event under inquiry' by suppressing parts of the 'res gestae.'[2]
 
 
 12
 Id. at 86 (citations omitted).
 
 
 13
 In United States v. Masters, the defendant was convicted of dealing in firearms without a license. Id. at 84. Defendant appealed on the grounds that the district court erred in admitting taped conversations between defendant and an undercover agent. Id. at 85. The conversations "covered negotiations or discussions between the undercover agents and the defendant with reference to the purchase of firearms from the defendant." Id. This court held that these conversations were admissible to "complete the story" of the charged offense. Id. at 87.
 
 
 14
 Carter v. United States also illustrates a situation where uncharged wrongful acts were admissible to "complete the story" of the charged offense. 549 F.2d 77 (8th Cir.1977). There the defendant was charged with possessing a firearm after a prior felony conviction. Id. In that case the defendant had attempted to obtain a prescription drug via a forged prescription. Id. at 78. The druggist suspected the prescription was forged and called the police. Id. When the druggist informed the defendant that he had called the police, the defendant fled. Id. During the chase, the defendant dropped a pistol over a retaining wall. Id. At trial, the court admitted the druggist's testimony concerning this sequence of events. Id. The Eighth Circuit held that these events were admissible as part of the res gestae or immediate context of the crime. Id.
 
 
 15
 We conclude that Kemp's testimony regarding the February incident was not admissible as res gestae. The two incidents of firearm possession are not temporally linked--they are separated by a month. Moreover, the incidents are not linked together by circumstance. During oral argument before this court, the government acknowledged that there was no evidence that the firearm Roy possessed in February was one of the firearms the BATF agents seized in March. Nor is the February incident necessary to a "full presentation of the case." United States v. Masters, 622 F.2d at 86. Roy is charged with possession of firearms after prior conviction of a felony. This offense is not ongoing and all that was necessary to complete the story of the offense was the possession of March 6, 1985. The government could have presented only evidence relating to March 6, 1985 and the "event under inquiry" would not have been "fragmentized." Id. We conclude therefore that Kemp's testimony concerning Roy's acts of February 6, 1985, was not necessary to "complete the story" of the charged offense and was not part of the res gestae of the offense.
 
 
 16
 The only ground the government gave for using evidence of the February incident was that it was part of the res gestae. Since this evidence was not part of the res gestae, the government used similar act evidence without an accompanying proper purpose. Accordingly, the district court erred in admitting the similar act evidence.[3]
 
 III.
 
 17
 Appellant further contends that the government failed to present sufficient evidence that the firearms in question were "in or affecting commerce." 18 U.S.C. app. 1202(a)(1). The interstate commerce nexus is an essential element of the offense with which appellant was charged. Id.; United States v. Montoya, 676 F.2d 428 (10th Cir.1982), cert. denied, 459 U.S. 856 (1982). Appellant asserts that the government's evidence is insufficient because a BATF agent opined that the firearms were manufactured in Connecticut without giving the basis of the opinion and without being qualified as an expert.
 
 
 18
 Two firearms are involved in this case--a Marlin model 81 DL .22 caliber bolt action rifle and a 16 gauge bolt action J.C. Higgins shotgun. At trial, the government had BATF Agent Sparks examine both firearms. As to each firearm, the government asked Sparks, "based upon [his] background, experience and expertise" as an ATF agent, if he knew where the firearm was manufactured. Defense counsel objected each time the government asked Sparks this question, but the court allowed Sparks to opine that the firearms were manufactured in Connecticut.
 
 
 19
 The record does not reflect that the place of manufacture was stamped on the gun. Nor does the record indicate that Sparks' testimony was based upon examination of the firearms and an accompanying study of trade publications, company catalogs or other reference material. Therefore, Sparks' testimony concerning the place of manufacture of the firearms was opinion testimony.
 
 
 20
 Although Sparks may well be a firearms expert, the government never qualified or tendered him as an expert. As a result, the appellant was not given an opportunity to voir dire Sparks as to his qualifications.[4] Since the record does not reflect that Sparks was qualified or tendered as an expert witness, we conclude that at trial Sparks testified as a lay witness.[5]
 
 
 21
 Opinion testimony by lay witnesses is limited by Fed.R.Evid. 701.:
 
 
 22
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 
 
 23
 Id. One type of lay opinion contemplated by this rule is a "shorthand rendition of [the witness'] knowledge of the total situation and the collective facts." United States v. Freeman, 514 F.2d 1184, 1191 (10th Cir.1975). A lay witness may give her opinion when:
 
 
 24
 (1) the opinion is based on personally observed facts;
 
 
 25
 (2) the witness cannot verbalize all the primary data she observed; and
 
 
 26
 (3) the opinion is the type of inference that lay persons commonly and reasonably draw. R. Carlson, E. Imwinkelried & E. Kionka, Materials for the Study of Evidence, 423-424 (1986). One example of a permissible lay opinion is the speed of a car. Id. at 422. The other type of lay opinion contemplated by Fed.R.Evid. 701 is "skilled lay observer" opinion. Id. at 425. This provides that a lay witness can give her opinion as to "the identification of a defendant as a person in a surveillance photograph, sanity, the identification of a handwriting style or the recognition of a voice." Id.
 
 
 27
 Sparks' testimony does not fit either category of permissible lay opinion. Rather, his testimony as to the place of manufacture was based upon "specialized knowledge" and should have been given only if he had testified as an expert. Fed.R.Evid. 702. Thus in the trial of this case, Sparks, a lay witness, gave an expert opinion. This is clearly impermissible.
 
 
 28
 An essential element of the offense with which Roy was charged is that the possessed firearm was in or affecting interstate commerce. 18 U.S.C. app. Sec. 1202(a)(1). Here the government's entire evidence of an interstate commerce nexus is expert opinion testimony by a lay witness. This testimonial evidence is inadmissible; therefore, there was no admissible evidence at trial whatsoever to prove the interstate commerce nexus.
 
 IV.
 
 29
 In oral argument before this court, the government conceded that it should not have used 404(b) evidence and it should have qualified Sparks as an expert before asking him where the firearms were manufactured. The government asserts, however, that this is harmless error.
 
 
 30
 As this court stated in United States v. Nyman, 649 F.2d 208 (4th Cir.1980):
 
 
 31
 In the realm of nonconstitutional error, the appropriate test of harmlessness, as expressed by Justice Rutledge in Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), is whether we can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' In applying this test it is important to keep in mind that it does not ask whether we believe that irrespective of the error there was sufficient evidence to convict, but whether, as Justice Traynor expressed it, we believe it 'highly probable that the error did not affect the judgment.' R. Traynor, The Riddle of Harmless Error 34-35 (1976).
 
 
 32
 Id. at 211.
 
 
 33
 We conclude that it is probable that these errors affected the outcome of this case. Since the 404(b) evidence was not shown to be admitted for a proper purpose, the admission of this evidence could have affected the outcome in one of two ways. First, admission of the appellant's possession of a firearm in February could have resulted in the jury convicting the appellant on the basis of that possession. The firearms taken in March were owned by Roy's father, located in the father's house which Roy rented. The contents of the house belonged to the father. Roy's father testified that the firearms were not left there at his son's request. Based on this evidence, the jury may well have acquitted Roy of the March possession. Secondly, if the jury recognized that the February incident did not form part of the charged offense, then the jury could have convicted the defendant based on his character rather than determining whether or not he in fact possessed the firearms on March 6, 1985. These are the precise dangers that Fed.R.Evid. 404 seeks to prevent.[6] Allowing BATF Agent Sparks to testify as to the place of manufacture of the gun clearly affected the outcome of the case. This inadmissible testimony was the government's only proof of the interstate commerce nexus. The jury had to rely solely on that erroneously admitted testimony in order to find an interstate commerce nexus and return a guilty verdict. Therefore, we do not believe it highly probable that these errors did not affect the judgment and we hold that these errors were harmful.
 
 
 34
 Accordingly, the judgment of the district court is vacated and the case is remanded for a new trial.
 
 
 35
 VACATED AND REMANDED.
 
 
 
 [1]
 Fed.R.Evid. 404(b) provides:
 (b) Other crimes, wrongs, or acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 In United States v. Masters, we held that these enumerated categories are "merely illustrative and not exclusionary." 622 F.2d 83, 86 (4th Cir.1980). As noted earlier, one proper purpose for admitting similar act evidence is "res gestae" i.e., when the similar act "completes the story" of the charged offense. Thus, res gestae is simply one category of admissible 404(b) evidence. Id. at 86.
 
 
 [2]
 In his discussion of similar acts evidence, Weinstein criticizes the use of the term "res gestae" in this context stating that the term has "never engendered helpful analysis in any of the areas in which it has been employed." J. Weinstein, Weinstein's Evidence 404-79 (1988). Criticism of the term res gestae is not new. In United States v. Matot, Judge Learned Hand denounced the use of the term stating, "... as for 'res gestae,' it is a phrase which has been accountable for so much confusion that it had best be denied any place whatever in legal terminology; if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms." 146 F.2d 197, 198 (2d Cir.1944). In a similar vein, Dean Wigmore stated that "the phrase res gestae has long been not only entirely useless, but even positively harmful ..." J. Wigmore, Wigmore on Evidence 255 (1976)
 The basis of this criticism is that the phrase is highly susceptible to misinterpretation. In the context of similar acts evidence, however, this court stated a very specific meaning of res gestae--a criminal or wrongful act and the charged offense are "so linked together in point of time and circumstances ... that one cannot be fully shown without proving the other." United States v. Masters, 622 F.2d 83 (4th Cir.1980) (quoting, United States v. Beechum, 582 F.2d 898 (5th Cir.1978)).
 
 
 [3]
 Character evidence and evidence of "other crimes, wrongs or acts" to prove character are generally excluded by Fed.R.Evid. 404. This exclusion is based upon a substantive concern--that the "introduction of such evidence is said to create a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." J. Weinstein, Weinstein's Evidence 404-29 (1988). Fed.R.Evid. 404 forbids "only one series of evidential hypotheses: a man who commits crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." Id. at 404-52
 While use of a defendant's similar crimes or acts is prohibited if the government seeks to admit such evidence to prove a defendant's character, similar act evidence may be used if accompanied by a proper purpose. This is not a suggestion; it is a requirement. If no proper purpose is present, there is no safeguard against the jury "punish[ing] a defendant for offenses other than those charged." Id. at 404-29.
 The government here advanced no proper purpose for using similar act evidence. Since this requirement was not met, the evidence is inadmissible. Due to the admission of this evidence at trial, there is a very real possibility that the jury convicted the appellant of an uncharged offense.
 
 
 [4]
 Roy argues that he had a right to voir dire Sparks as to his expert qualifications. Appellant cites United States v. Cecil, 836 F.2d 1431 (4th Cir.1988), and United States v. Gillis, 773 F.2d 549 (4th Cir.1985) for this proposition. Those cases are contextually different from the present case for they deal with expert opinion as to insanity. Cecil, 836 F.2d at 1439; Gillis, 773 F.2d at 554
 The dispositive issue here is whether the interstate nexus was based solely upon inadmissible evidence. Therefore it is not necessary to determine whether or not the appellant had an absolute right to voir dire Sparks as to his expert qualifications.
 
 
 [5]
 Had the government tendered Sparks as a firearms expert, we would reach a different outcome. If tendered as a firearms expert, Sparks could have given his opinion as to the place of manufacture and this could have been sufficient evidence to satisfy the interstate commerce nexus. See United States v. Harper, 802 F.2d 115 (5th Cir.1986); United States v. Simmons, 773 F.2d 1455, 1460 (4th Cir.1985); United States v. Stine, 458 F.Supp. 366 (E.D.Pa.1978)
 
 
 [6]
 See supra note 3