**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eric V. JOHNSON, Defendant–Appellant.**

No. 93–5974.

United States Court of Appeals,
Sixth Circuit.

Submitted March 7, 1994.

Decided April 22, 1994.

Curtis L. Collier, Asst. U.S. Atty. (briefed), Chattanooga, TN, for plaintiff-appellee.

Frank B. Perry (briefed), Ringgold, GA, for defendant-appellant.

Before: MERRITT, Chief Judge; GUY, Circuit Judge; and ALDRICH, District Judge.*

MERRITT, Chief Judge.

This criminal appeal raises a double jeopardy question arising from the enforcement of two federal criminal statutes, the armed carjacking statute and the armed violence enhancement statute, as well as a question of Commerce Clause interpretation respecting the federal jurisdictional element of the carjacking statute. In 1992 Congress enacted the carjacking statute (18 U.S.C. § 2119) which criminalizes the theft from the "presence of another" of a car "transported, shipped or received in interstate" commerce while "possessing a firearm" during the commission of the offense.[1] Congress had previously enacted in 1984 a more general statute (18 U.S.C. § 924(c)) requiring an enhanced, mandatory, consecutive, five-year sentence for using a firearm "in relation to any crime of violence," a statute which states that the sentence shall be "in addition to the punishment provided for such crime of violence."[2] The issues presented by defendant are (1) whether conviction and consecutive sentencing under both statutes criminalizing armed violence abridges the Double Jeopardy Clause and (2) whether a district court errs in refusing to give the jury an instruction that the carjacking statute does not cover

cars which have come to rest in a state after originally moving in interstate commerce. We conclude that the answer to both questions is "No," and we affirm the judgment of the District Court.

No factual dispute is relevant to this appeal. The defendant and two other men forcibly took a 1987 Nissan car from its owner, Professor Kingdon, in November 1992, in Chattanooga. During the course of the carjacking the defendant's confederate shot Professor Kingdon twice in the back of the head, but Kingdon lived to testify against the defendant at his trial. Kingdon had purchased the car new from a Chattanooga dealer. Nissan manufactured the car in Smyrna, Tennessee, and shipped it to the Chattanooga dealer. The car passed through Georgia on its way to Chattanooga. The jury convicted the defendant of violating both the armed carjacking and the armed violence statutes, and the court imposed consecutive sentences of 91 months for carjacking and 60 months under the more general armed violence statute.

■ Our method of analysis of double jeopardy claims of this type is set out in *Pandelli v. United States,* 635 F.2d 533 (6th Cir.1980). The first step is to determine whether Congress intended to punish cumu-

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Whoever, possessing a firearm ... takes a motor vehicle that has been transported, shipped or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

 (1) be fined ... or imprisoned not more than 15 years or both;
 (2) if serious bodily injury ... results, be fined ... or imprisoned not more than 25 years, or both; and
 (3) if death results, be fined ... or imprisoned for any number of years up to life, or both.
 18 U.S.C. § 2119.

2. Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence ... which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) ...

uses or carries a firearm, shall, *in addition to the punishment provided* for such crime of violence ... be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence ... in which the firearm was used or carried....

18 U.S.C. § 924(c)(1) (emphasis added). The statute defines "crime of violence" as any felony that
 (a) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
 (b) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 924(c)(3).

latively the same conduct which violates two statutes.[3]

■ We agree with the holding and reasoning of the opinion of Judge Wisdom for the Fifth Circuit in *United States v. Singleton*, 16 F.3d 1419 (5th Cir.1994), that "Congress has clearly indicated its intent to punish cumulatively violations of §§ 2119 and 924(c)," 16 F.3d at 1425. The language of § 924(c) is plain. The statute mandates a five year, mandatory, consecutive sentence "in addition to" the punishment for the other crime of violence.

■ Armed carjacking is a specific crime of violence carrying a nonmandatory sentence. Section 924(c), written in much more general language than the carjacking statute, simply enhances punishment for the same violent conduct. For reasons stated at length by the Fifth Circuit, reasons we need not repeat here, Congress wanted to make sure in § 924(c) that all federal crimes of violence committed with a firearm are enhanced, even though the other more specific crime of violence also requires the presence of a firearm. Congress intended to impose additional punishment for the same conduct, and the Double Jeopardy Clause does not proscribe multiplying the punishment in this way.[4]

Section 924(c) includes or overlaps the conduct proscribed in § 2119 but requires courts to utilize a separate and distinct punishment technique (mandatory imprisonment for an additional term) in order to ensure that such offenders receive a harsher punishment. Congress in effect said to judges that whatever the punishment is for the more specific violent crime you must add five more years to it when the terms of § 924(c) are met. As

the Fifth Circuit observed, "Congress may make a plain statement of its intent to stack punishments in a specified class of crimes as it did in § 924(c). Once Congress does that, it need not reiterate that intent in any subsequent statutes that fall within the previously defined class.... Congress [need not] repeat itself, restating in each subsequent enactment an intention Congress thought it clearly expressed once already." *United States v. Singleton*, 16 F.3d at 1427–28. When Congress enacted the carjacking statute, § 924(c) was on the books. Congress gave no indication that § 2119 should supplant or modify § 924(c). "Absent language expressing a departure from § 924(c) ... we must read the later enacted statutes in harmony with Congress's previously expressed intent to impose cumulative punishments." *Id.*

■ The defendant also argues that the carjacking statute must be interpreted to cover only those cars which are "moving in interstate commerce" at the time of the carjacking, not those which have "come to rest" in the state. He contends that the statute must be given a construction like the Dyer Act, 18 U.S.C. § 2312 (criminalizing the transportation of a stolen car across state lines), in order to avoid violation of the Commerce Clause.

The statute itself identifies the federal jurisdictional element as a car "that has been transported, shipped or received in interstate or foreign commerce," note 1, *supra*. The car in the present case travelled through another state, Georgia, when shipped from the manufacturer to the dealer. In *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), and *Scarborough v.*

---

3. *Pandelli* noted that:

> The *Blockburger* test [284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)], as modified in *Whalen* [*v. U.S.*,] [445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)] and [*Illinois v.*] *Vitale*, [447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980)] comes into play only after other techniques of statutory construction have proved to be inconclusive. The first step is for the court to inquire "whether Congress intended to punish each statutory violation separately." *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977). *To determine the congressional intent it is necessary to examine the statutory language and*

the legislative history, as well as to utilize other techniques of statutory construction. *See Whalen*, 445 U.S. at 690, 100 S.Ct. at 1437. The Court reaches the *Blockburger* test only when those prior techniques of construction have failed to resolve the question of whether the legislature intends to allow cumulative punishments for violations of two statutes. *Pandelli*, 635 F.2d at 536.

4. *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981) ("where Congress intended ... to impose multiple punishments, imposition of such sentences does not violate the Constitution.")

*United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977), the Supreme Court construed the same type language in the firearms statute, "any firearm or ammunition which has been *shipped or transported* in interstate or foreign commerce" (emphasis added) to require nothing "more than the minimal nexus that the firearm have been, at some time, in interstate commerce."

 It may well be that the carjacking statute is unwise and encroaches on traditional views of federalism, as Judge Wiseman observes in *United States v. Cortner,* 834 F.Supp. 242 (M.D.Tenn.1993), but it is not unconstitutional under current Commerce Clause doctrine. So long as the activity regulated has an effect on interstate commerce it makes no difference that the transported item is now "at rest" and is no longer "in" interstate commerce. A long line of cases establishes the general or aggregate "economic effect" standard and does away with the requirement that the individual act at issue must be "in interstate commerce" or involve movement in interstate commerce, *e.g., Wickard v. Filburn,* 317 U.S. 111, 127–28, 63 S.Ct. 82, 90–91, 87 L.Ed. 122 (1942) (Congress can control a farmer's production of wheat for home consumption); *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 258–59, 85 S.Ct. 348, 358–59, 13 L.Ed.2d 258 (1964) (Congress can control racial discrimination in places of public accommodation); *Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 1361, 28 L.Ed.2d 686 (1971) (Congress can control loan sharking even though "individual instances" may be "trivial"). It is obvious that carjackings as a category of criminal activity have an effect on interstate travel and the travel of foreign citizens to this country. Thus we must reject defendant's argument that the carjacking statute as applied here is unconstitutional.

Accordingly, the judgment of the District Court is AFFIRMED.