**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Keith Edward OVERSTREET,
Defendant–Appellant.**

No. 93–5272.

United States Court of Appeals,
Tenth Circuit.

Nov. 18, 1994.

---

Neal B. Kirkpatrick, Asst. U.S. Atty. (Stephen C. Lewis, U.S. Atty., with him on the brief), Tulsa, OK, for plaintiff-appellee.

Craig Bryant, Asst. Federal Public Defender (Stephen J. Knorr, Federal Public Defender, with him on the brief), Tulsa, OK, for defendant-appellant.

Before BALDOCK and EBEL, Circuit Judges, and O'CONNOR, Senior District Judge.*

EARL E. O'CONNOR, Senior District Judge.

Defendant Overstreet appeals his convictions for armed carjacking in violation of 18 U.S.C. § 2119 (Count 1), using a firearm while committing a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Count 2), and possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 3). Defendant was initially charged in a two-count indictment for carjacking and the use of a firearm in the commission of a violent crime. The first trial ended in a hung jury and a mistrial. The government filed a superseding indictment which realleged the first two counts and added the third for possession of a firearm after having been convicted of a felony. The jury found defendant guilty on all three counts. Defendant was sentenced to concurrent terms of 77 months on Counts 1 and 3 and a consecutive term of 60 months on Count 2.

On appeal, defendant challenges: 1) the constitutionality of the carjacking statute; 2) his convictions on Counts 1 and 2 on Double Jeopardy grounds; and 3) the admission of evidence on the interstate movement of the firearm used by defendant. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Defendant and Miles Holden, the carjacking victim, met in January 1993 through a mutual friend, Tamiko Spencer, and agreed to an even "exchange" of defendant's Jeep Cherokee for Holden's Camaro. Defendant was unhappy with the mechanical condition of the Camaro he received from Holden because it did not run properly and defendant had to spend money having it repaired.

The carjacking occurred at approximately 1:00 a.m. on February 26, 1993. Holden drove the Jeep over to an apartment complex to pick up Tamiko Spencer and left the Jeep running while he went inside. As Holden

returned to the Jeep, defendant approached him holding a silver revolver. Defendant pointed the gun at Holden's face and cocked it. Holden testified that he could see bullets in the chamber and that he recognized defendant's face and voice.

Holden ran, found security officer Anthony Partsch, and told him what had just happened. Partsch followed the Jeep and a second vehicle, a small Ford, a short distance to get a tag number. The police stopped defendant and his brother at 1:35 a.m. that same morning in a Ford Tempo, which belonged to defendant's brother, and took them into custody. The Jeep was found on March 9, 1993, at an address previously listed by defendant as his Tulsa address.

## I. The Constitutionality of the Carjacking Statute.

■ Defendant challenges the constitutionality of the carjacking statute, 18 U.S.C. § 2119, for the first time on appeal. The contemporaneous objection requirement of Federal Rule of Criminal Procedure 30 generally requires that a party make a timely objection to preserve an issue for appeal. However, pursuant to Federal Rule of Criminal Procedure 52(b), we may review an issue not preserved below under the plain error standard of review. *See, e.g., United States v. Olano,* —— U.S. ——, ———— ——, 113 S.Ct. 1770, 1778–79, 123 L.Ed.2d 508 (1993) (appellate court should conduct plain error review under Rule 52(b) "in those circumstances where a miscarriage of justice would otherwise result"); *United States v. Nelson,* 36 F.3d 1001, 1002 (10th Cir.1994) (application of sentencing guidelines reviewed for plain error despite failure to object at sentencing hearing); *United States v. Knowles,* 29 F.3d 947, 950–51 (5th Cir.1994) (failure to challenge constitutionality of criminal statute in district court confines appellate court's review to "a search for plain error").

The constitutionality of section 2119 is a question of first impression in this circuit. The other circuits that have considered the

---

* The Honorable Earl E. O'Connor, Senior United States District Judge for the District of Kansas, sitting by designation.

question have concluded that although the statute may stretch the outer limits of the Commerce Clause, under current doctrine it is not unconstitutional. *United States v. Harris*, 25 F.3d 1275, 1280 (5th Cir.1994); *United States v. Johnson*, 22 F.3d 106, 108–09 (6th Cir.1994); *contra United States v. Cortner*, 834 F.Supp. 242 (M.D.Tenn.1993) (holding that interstate commerce is not implicated and, therefore, § 2119 is unconstitutional), *rev'd sub nom., United States v. Osteen*, 30 F.3d 135 (6th Cir.1994).

◼ The test is whether there is *any* rational basis for the finding of Congress that the regulated activity affects interstate commerce. *See Hodel v. Indiana*, 452 U.S. 314, 323–24, 101 S.Ct. 2376, 2382–83, 69 L.Ed.2d 40 (1981); *Harris*, 25 F.3d at 1280. Courts generally have found a nexus between section 2119 and interstate commerce in: 1) the effect of carjacking on interstate travel and the travel of foreign citizens in this country, *Johnson*, 22 F.3d at 109; 2) the impact of the sale of stolen cars and parts in interstate commerce; and 3) increased insurance premiums that result from carjackings. *United States v. Watson*, 815 F.Supp. 827, 831 (E.D.Pa.1993) (providing an excellent discussion of the evolution of modern Commerce Clause doctrine and the constitutionality of § 2119).

◼ We recognize the concerns about broadening federal jurisdiction raised by Judge Wiseman in *Cortner*, 834 F.Supp. at 243–44. Nevertheless, we do not agree that section 2119 "lacks any rational nexus to interstate commerce and that Congress lacks the power to legislate thereon." *See id.* at 244. The Supreme Court has long upheld similar federal statutes under an extremely broad modern-day interpretation of the Commerce Clause. *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) (rejecting challenge to criminal loan-sharking statute, 18 U.S.C. § 891, where wholly intrastate actions had an effect on interstate commerce); *Brooks v. United States*, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699 (1925) (upholding the Dyer Act, 18 U.S.C. § 2312, involving stolen vehicles);

*Hoke v. United States*, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913) (rejecting a challenge to the Mann Act, 18 U.S.C. § 2421, involving transportation of prostitutes); *Gooch v. United States*, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522 (1936) (rejecting challenge to "Lindbergh Law" governing certain kidnappings, 18 U.S.C. § 1201). *See also Watson*, 815 F.Supp. at 829–32. We agree with the Fifth and Sixth Circuits that, under current Commerce Clause doctrine, section 2119 is not unconstitutional. Accordingly, defendant's conviction under the statute was not plain error.

## II. Double Jeopardy.

◼ The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from multiple prosecutions and from multiple punishments for the same conduct. *United States v. Dixon*, —— U.S. ——, —— – ——, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (setting forth a test for determining whether two statutes punish the same conduct).[1] *Blockburger* is not necessarily determinative because Congress may impose multiple punishments for the same conduct without violating the Double Jeopardy Clause if it clearly expresses its intent to do so. *Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985); *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see also Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. Hill*, 971 F.2d 1461 (10th Cir.1992); *United States v. Lanzi*, 933 F.2d 824, 825–26 (10th Cir. 1991).

Defendant challenges the constitutionality of his sentence under both 18 U.S.C.

---

1. In light of our conclusion below that Congress clearly expressed its intent to impose cumulative punishment under § 924(c)(1), we need not concern ourselves with the *Blockburger* test.

§ 924(c)(1)[2] and 18 U.S.C. § 2119[3] on the ground that cumulative punishment under the two statutes violates his Fifth Amendment Double Jeopardy rights. Defendant argues that the two statutes punish the same conduct because one who violates section 2119 necessarily violates section 924(c)(1) and Congress did not clearly express an intent that section 924(c)(1) be imposed cumulatively with section 2119.

The precise question of cumulative punishment under sections 2119 and 924(c) is one of first impression in this circuit. However, in *United States v. Lanzi*, 933 F.2d 824, 826 (10th Cir.1991), we held that section 924(c)(1) applies cumulatively to add five consecutive years to a sentence for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). We stated that the plain language of section 924(c)(1) "clearly evinces congressional intent that any defendant using a dangerous weapon in connection with a violent crime must be sentenced to five years imprisonment, such sentence to run consecutive to that imposed for the violent crime." *Id.*

In *Lanzi*, we noted that the legislative history of the 1984 amendment to section 924(c)(1) expressly refers to section 2113, the bank robbery statute, as one of the crimes to which section 924(c)(1) applies. *Id.* By contrast, section 2119 is not mentioned in the legislative history of the 1984 amendment to section 924(c)(1) because section 2119 was not enacted until 1992. Nevertheless, our observation regarding the clearly evidenced intent of Congress that section 924(c)(1) be broadly applied to add a consecutive five years to the punishment of a violent crime committed with a gun is no less true with regard to section 2119 than it was to section 2113.

Numerous courts and all courts of appeals that have considered the issue have concluded that Congress clearly indicated its intent to cumulate punishment under sections 924(c)(1) and 2119. *See, e.g., United States v. Jones*, 34 F.3d 596, 602 (8th Cir. 1994); *United States v. Johnson*, 32 F.3d 82, 85–86 (4th Cir.1994); *United States v. Mohammed*, 27 F.3d 815, 820–21 (2d Cir.1994); *United States v. Johnson*, 22 F.3d 106, 108 (6th Cir.1994); *United States v. Singleton*, 16 F.3d 1419, 1425 (5th Cir.1994).

We agree with Judge Wisdom's well-reasoned and comprehensive opinion in *Singleton* and adopt his analysis and holding. Congress broadly defined a predicate crime of violence in the 1984 amended version of section 924(c)(1) as: "*any* crime of violence . . . (*including* a crime of violence . . . which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device)" (emphasis added). 18 U.S.C. § 924(c)(1); *see also Singleton*, 16 F.3d at 1426–27. In addition, the legislative history of section 924(c)(1) reveals the intent of Congress to impose a consecutive five year punishment on anyone who commits a violent crime using a firearm:

[S]ubsection 924(c) should be completely revised to ensure that *all* persons who commit Federal crimes of violence, *including* those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence,

---

**2.** 18 U.S.C. § 924(c)(1) provides, in pertinent part, as follows:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, *in addition to* the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this

subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

(emphasis added).

**3.** 18 U.S.C. § 2119 is violated by one who, while "possessing a firearm . . . , takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation," or an attempt at the same.

without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime and without the possibility of a probationary sentence or parole.

S.Rep. No. 225, 98th Congr., 2d Sess. 312–13 (1984), 1984 U.S.C.C.A.N. 3184, 3491 (footnotes omitted, emphasis added); *see also Singleton,* 16 F.3d at 1426.

The mere fact that section 2119 was enacted after section 924(c)(1), but does not reference section 924(c)(1), does not alter our conclusion that Congress intended cumulative punishments under the two statutes. "Congress may make a plain statement of its intent to stack punishments in a specified class of crimes as it did in § 924(c)(1). Once Congress does that, it need not reiterate that intent in any subsequent statutes that fall within the previously defined class." *Singleton,* 16 F.3d at 1427–28.

■ Defendant raises one additional argument not addressed in *Singleton.* Defendant argues that because section 2119 carries with it a possible life sentence if someone is killed during a carjacking, Congress did not intend for section 924(c)(1) to apply to a section 2119 conviction because the result could be a sentence of life plus a consecutive five years. We are not persuaded. Congress cannot expressly reconcile every potential sentencing result in enacting legislation. *See Lanzi,* 933 F.2d at 827 (where statutory penalty and guideline sentence conflict, statute controls). Although a sentence of life plus five years might result from cumulative punishment under sections 2119 and 924(c), absent an express indication by Congress to exclude section 2119 from the broad reach of section 924(c)(1), that possibility does not alter our view that Congress clearly expressed its intent that section 924(c)(1) apply cumulatively to *all* crimes of violence, including section 2119.

### III. Evidence on the Interstate Movement of the Firearm.

Defendant's final point on appeal is that the trial court abused its discretion in admitting the testimony of ATF Agent Richard Turner. Agent Turner testified generally that there are not, and have never been, any manufacturers of revolvers in Oklahoma. Accordingly, Turner opined, any revolver used during a carjacking in Oklahoma necessarily travelled in interstate commerce.[4]

■ Turner had not examined any particular firearm in connection with this case and had no knowledge or opinion about the firearm identified in the indictment. The gun in question was never recovered and was not available at trial. However, the government was not required to introduce the actual firearm to proceed on the section 922(g) charge. *United States v. Hamilton,* 992 F.2d 1126, 1128 (10th Cir.1993); *United States v. Gregg,* 803 F.2d 568, 572 (10th Cir.1986).

Defendant merely argues that the gun in question was not sufficiently identified to provide foundation for Agent Turner's testimony. He points to *United States v. Gregg,* 803 F.2d at 571, where testimony about the interstate travel of the gun in question was allowed only after a detailed description of the gun was provided by witnesses to the crime.

■ Although the gun in the instant case was described in far less detail than in *Gregg,* it was identified as a revolver. Holden testified that the defendant was holding a silver, large caliber revolver which looked like the gun used in the courtroom demonstration of the carjacking. Holden's testimony that a revolver of that general description was involved in the carjacking provided sufficient foundation for Agent Turner's testimony that no revolvers are manufactured in Oklahoma and, thus, the gun must have travelled in interstate commerce. The trial court did not abuse its discretion in admitting the agent's testimony.

**AFFIRMED.**

---

**4.** Such proof was required to satisfy the interstate commerce element of the § 922(g) charge in Count 3.