57 F.3d 1072
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Garland Junior WOOSLEY, Jr., Defendant-Appellant.
 No. 94-6137.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1995.
 
 Before: NORRIS and DAUGHTREY, Circuit Judges; and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 By an indictment filed in the United States District Court for the Eastern District of Kentucky, Garland Junior Woosley, Jr. was charged with three offenses which were alleged to have occurred at Winchester, Clark County, Kentucky, on February 18, 1994.
 
 
 2
 In Count 1 he is charged with carjacking in violation of 18 U.S.C. Sec. 2119. In Count 2 he is charged with the knowing use of a firearm in relation to the crime of violence charged in Count 1 in violation of 18 U.S.C. Sec. 924(c). This statute is referred to herein as the "Armed Violent Offender Act." In Count 3 he is charged with being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g).
 
 
 3
 He was convicted of all counts by jury trial.
 
 
 4
 His sentence on Count 1 was enhanced pursuant to 18 U.S.C. Sec. 924(c).
 
 
 5
 On September 1, 1994, he received a combined sentence of 350 months.
 
 
 6
 On timely appeal he raises the following issues.
 
 
 7
 I. Was there sufficient evidence to support the verdict of the jury?
 
 
 8
 II. Did the trial court abuse its discretion by not excluding the testimony of Linda Winkle, an expert witness in the analysis of hair samples?
 
 
 9
 III. Did the trial court abuse its discretion by denying Mr. Woosley's pre-trial motion and not severing the charge of being a felon in possession of a firearm (Count 3) from the trial of Counts 1 and 2 of the indictment?
 
 
 10
 IV. Did the trial court err as a matter of law by denying Mr. Woosley's motion to dismiss Count 2 of the indictment as violative of the constitutional prohibition against double jeopardy?
 
 
 11
 V. Did the trial court err by refusing to instruct the jury as to "bodily injury" so as to distinguish "severe bodily injury" as requested by Mr. Woosley?
 
 
 12
 This prosecution stems from a carjacking. On February 18, 1994, at approximately 7:30 p.m., Peggy Craycraft was accosted while getting into her car in the Wal-Mart parking lot in Winchester, Kentucky. A man forced her into the car, holding what appeared to her to be a handgun, and drove away.
 
 
 13
 The man then indicated his intent to rape her and said if it was not good she would be shot. Craycraft testified that she believed he was going to rape and kill her. Consequently, she jumped from the moving car, rolled on the highway, got up and ran. A woman in a following car picked up Craycraft and drove her to the Winchester police station. An ambulance was called and Craycraft was taken to the hospital.
 
 I. SUFFICIENCY OF THE EVIDENCE
 
 14
 The appellant argues that the evidence was insufficient with respect to three issues: identification of Woosley, whether a firearm was used and whether Craycraft suffered serious bodily injury.
 
 
 15
 In reviewing a claim challenging the sufficiency of the evidence, the district court and the appellate courts are to apply the same standard.
 
 
 16
 Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This court "will reverse a judgment for insufficiency of evidence only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial." United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984). It is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. [United States v.] Adamo, 742 F.2d , 932 [ (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985) ].
 
 
 17
 United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992).
 
 A. The Identity Issue
 
 18
 The victim identified Woosley as her abductor. Another witness identified Woosley as Woosley attempted to raise the hood of the victim's abandoned automobile. There was other substantial circumstantial evidence corroborating the direct identification testimony.
 
 
 19
 We find that there was sufficient evidence to support the jury's determination that Woosley was the perpetrator of the crime.
 
 B. The Firearm Issue
 
 20
 At the time of the offense 18 U.S.C. Sec. 2119(2) read as follows:
 
 
 21
 Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--
 
 
 22
 (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both....
 
 
 23
 The definition of firearm in 18 U.S.C. Sec. 921(a)(3) is applicable to each offense charged in the indictment. It reads as follows:
 
 
 24
 The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.
 
 
 25
 We agree with the analysis the Court of Appeals for the Second Circuit employed in a similar case.
 
 
 26
 Even though a gun is not recovered, eyewitness testimony may be sufficient for the government to meet its burden of proof under Sec. 921(a)(3), so long as it provides a rational basis for the jury to find that the object observed by eyewitnesses "was in fact a firearm." * * * The mere possibility that the object seen by witnesses may have been a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility.
 
 
 27
 United States v. Jones, 16 F.3d 487, 490-91 (2d Cir.1994), quoting United States v. Castillo, 924 F.2d 1227, 1230 (2d Cir.1991).
 
 
 28
 Craycraft testified that Woosley kept poking her in the side with a gun and that Woosley told her he was going to shoot her. She testified that as she made her escape from the car she put her hand on the barrel of the gun and it felt like metal.
 
 
 29
 We conclude that this evidence constitutes sufficient evidence to support the finding that Woosley possessed a firearm at the time the crime of violence occurred.
 
 C. Evidence of Serious Bodily Injury
 
 30
 18 U.S.C. Sec. 2119 provides that "serious bodily injury" is to be defined in accordance with that term's definition in another statute, 18 U.S.C. Sec. 1365. Under that section, serious bodily injury is defined as bodily injury involving: (a) a substantial risk of death; (b) extreme physical pain; (c) protracted and obvious disfigurement; or (d) protracted loss of impairment of the function of a bodily member, organ, or mental faculty.
 
 
 31
 The woman who picked up Craycraft on the street testified that the Craycraft car was going quite fast when Craycraft jumped out. Craycraft testified that she suffered road burns to her back and shoulder, a cut to her head which required 14 stitches, a severely sprained wrist, severe and persistent headaches, and cuts and abrasions to her back. She described the headaches as the worst headaches of her life. Her physician prescribed pain pills which she took for five days. If serious bodily injury resulted from the incident it was because of the physical pain which she experienced. We note that the statutory definition of serious bodily injury does not require that there be a prolonged period of extreme pain.
 
 
 32
 We are of the opinion that a reasonable jury could have found that serious bodily injury, as that phrase is defined by statute, resulted from her fall from the moving automobile.
 
 II. EXPERT TESTIMONY
 
 33
 Linda Winkle from the Kentucky State Police forensic laboratory testified that hair samples from Woosley's head were compared in 16 ways with two hairs found in the Craycraft automobile. She expressed her opinion, based upon the 16 points of comparison, that Woosley's hair was similar to the two hair samples found in the Craycraft automobile. She testified that she could not exclude the possibility that the two questioned hairs came from a person other than Woosley. By timely objection the appellant claimed that the expert's testimony was more prejudicial than probative and should have been excluded pursuant to Rule 403, Fed.R.Evid.
 
 
 34
 Abuse of discretion is the proper standard of review to determine whether the trial court improperly admitted expert testimony. "The admissibility of expert testimony 'has been traditionally left to the sound discretion of the trial court.' " United States v. Bonds, 12 F.3d 540, 554 (6th Cir.1993) quoting United States v. Green, 548 F.2d 1261, 1268 (6th Cir.1977). This standard is broadly construed and the trial court's actions are sustained unless they are clearly erroneous. Id.
 
 
 35
 The hair comparison testimony was limited in value but the limitations upon its value were made clear by the expert's testimony. We conclude that the trial court did not abuse its discretion in allowing the jury to hear and take into consideration the expert's opinion concerning hair comparison.
 
 III. SEVERANCE
 
 36
 Woosley moved to sever Count 3 from Counts 1 and 2. The court denied the motion.
 
 
 37
 Preserving his claim of error, Woosley assented to a stipulation that he was a convicted felon. This stipulation was read to the jury.
 
 
 38
 This court will reverse a district court's denial of a motion for severance only for abuse of discretion. United States v. Sivils, 960 F.2d 587, 594 (6th Cir.) cert. denied, 113 S.Ct. 130 (1992); United States v. Davis, 809 F.2d 1194, 1207 (6th Cir.); cert. denied, 483 U.S. 1007 (1987). The court did not abuse its discretion in denying the motion.
 
 IV. DOUBLE JEOPARDY
 
 39
 The appellant asserts that prosecution for violation of the carjacking statute, 18 U.S.C. Sec. 2119, and for violation of the Armed Violent Offender statute because of the same conduct violates the double jeopardy clause of the Fifth Amendment to the United States Constitution. This court has directly addressed and rejected this contention in United States v. Johnson, 22 F.3d 106 (6th Cir.1994).
 
 V. JURY INSTRUCTIONS
 
 40
 As set forth above, the carjacking statute borrows its definition of "serious bodily injury" from 18 U.S.C. Sec. 1365 which creates criminal liability, under specified circumstances, for tampering with or altering the labeling on a consumer product. 18 U.S.C. Sec. 1365 also contains a definition of "bodily injury." The appellant made a timely request that the jury instructions include this statutory definition of bodily injury.
 
 
 41
 Had the jury determined that Craycraft's injuries did not reach the threshold of serious bodily injury, it could have returned a verdict of guilty of the included offense of carjacking for which the maximum custodial sentence is 15 years rather than 25 years. The carjacking statute does not create an in-between offense of carjacking if bodily injury less than serious bodily injury results.
 
 
 42
 The trial judge concluded that to include a definition of bodily injury from the consumer tampering statute could have confused the jury. Appellant's counsel was free to argue that Craycraft's injuries, while painful, did not reach the level of serious bodily injury.
 
 
 43
 The trial court did not err in refusing to include the requested jury instruction.
 
 VI. CONCLUSION
 
 44
 The appellant's conviction is affirmed.
 
 
 
 *
 Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation