UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald SEAWOOD, Eric Goode, and Cedric Patterson, Defendants–Appellants.

Nos. 97–4127, 98–1196, 98–2007.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1999.

Decided April 7, 1999.

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for United States of America in Nos. 97–4127, 98–2007.

William T. Enslen (argued), Enslen, Enslen & Matthews, Hammond, IN, for Ronald Seawood in No. 97–4127.

Jon E. DeGuilio, Office of the United States Attorney, Dyer, IN, for United States of America in No. 98–1196.

Frederick T. Work (argued), Gary, IN, for Eric Goode in No. 98–1196.

James N. Thiros (argued), Cohen & Thiros, Merrillville, IN, for Cedric Patterson in No. 98–2007.

Before KANNE, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

When something happens after a party breaks up at 3 o'clock in the morning, it usually isn't something good. That's true in spades for what happened to Jerome Mack and LaShawn Davis, who left a party at that time and were the victims of a carjacking. Davis was also brutally, and repeatedly, sexually assaulted. The three defendants on this appeal—Ronald Seawood, Eric Goode, and Cedric Patterson—were convicted, after a jury trial, of charges growing out of what for Mack, and especially for Davis, can only be described as a nightmare.

On August 12, 1994, the 20–year–old Davis attended a fraternity party in Gary, Indiana. When the party broke up, around 3 a.m., Davis left with Mack, the brother of her boyfriend. Mack, 23 years old at the time and a recent graduate of Moorehouse College, was driving his mother's pearl white 1993 LS 400 Lexus sedan.

As Mack parked the Lexus in front of his house (in an area in Gary with large homes and lots of trees) a car pulled up alongside him and four people got out. The four, several armed with guns, had bandanas over their faces. They ordered Mack and Davis to step outside, and one of the men removed a cellular telephone from the Lexus. Mack was ordered to get on the ground, and he complied. Two of the men ordered Davis to give up her jewelry. Davis was brought to where Mack was on the ground and, as directed by one of the marauders, she removed her panty hose and kept her eyes closed. An attempt to rape Davis on the spot was foiled by a passing car. Turning to Mack, the men took his watch, chain, and wallet (which, among other things, contained a college ID card).

A gun was put to Mack's head, and he was ordered to get into the trunk of the Lexus. He did so, but used his legs to prevent the trunk lid from closing tight. The assailants then took off, two in each car, with Davis in the Lexus. Mack was able to get out of the trunk as the Lexus was starting to move. He got the license number of the other car (which turned out to be a stolen Dodge Shadow) and ran into his house to call the police. The call to the police was recorded. It was made at 4:06 a.m.

In the back seat of the Lexus, while the car was being driven, one of the criminals raped Davis. The Lexus then stopped next to the other car. The rapist and a man in that car exchanged places, and Davis was raped a second time. The Lexus then stopped again and another man

moved into the back seat with Davis. She was raped again. Davis also performed, as ordered, oral sex on two of the men. After Davis pleaded for her life she was let out of the car, and someone put the keys to the Lexus in her hand and told her to start counting. The assailants took off in their (stolen) car and Davis ran to a nearby house, where she used a phone to call 911 and her parents. Her report to the police was received at 4:49 a.m. Davis was taken to a hospital where she was processed for evidence of sexual assault. Her soiled dress was given to the police. Good detective work followed, aided by some stupid moves by the criminals.

The stupid moves were a series of telephone calls made by the criminals on the cell phone taken from the Lexus. Thirteen calls in all were made, and four of them, a few hours after the crimes, were traced to the Gary home of Anthony Swims. Swims turned out to be a friend of Goode, Patterson, and Seawood, who all lived within a few blocks of each other on Gary's west side. When questioned, some of the defendants said they didn't know each other. The police found out that this was false: Swims, Goode, Patterson, and Seawood were friends who had gone to school together.

So the police had crimes, victims, and some false statements. But neither Mack nor Davis could identify their assailants. How, then, did this turn into a multi-count conviction for conspiracy to commit carjacking (18 U.S.C. § 371), carjacking (18 U.S.C. §§ 2119 and 2), and using a firearm during the commission of a crime of violence (18 U.S.C. § 924(c))? Well, the defendants argue that it didn't, because insufficiency of the evidence is the cornerstone of their appeals.

We have said many times that a defendant making a sufficiency of the evidence challenge bears a heavy burden and faces a nearly insurmountable hurdle. *See United States v. Hickok*, 77 F.3d 992 (7th Cir.1996), and *United States v. Teague*, 956 F.2d 1427 (7th Cir.1992). The evidence is reviewed in the light most favorable to the government. *United States v. Montgomery*, 990 F.2d 266 (7th Cir.1993). And it is not our job to reconsider the evidence or assess the credibility of the witnesses. Rather, a verdict will be overturned "[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Hickok*, 77 F.3d at 1002.

We mentioned a moment ago that stupidity and good police work led to the defendants' undoing. We noted the ill-advised use of the stolen cell phone. Now we'll mention the good police work which netted some small, but very crucial, bits of physical evidence which drove huge nails into each defendant's coffin.

Goode's goose was cooked by one of his fingerprints, which was found on Mack's college ID card. The card had been in Mack's wallet, but it, and other things of no apparent value, were tossed into the trunk of the Lexus by one of the carjackers. The presence of Goode's print on Mack's ID had no innocent explanation. Its presence proved that he was one of the scoundrels.

Patterson and Seawood were nailed by their DNA. Patterson's DNA matched the DNA on a semen stain found on Davis's dress. Ditto for Seawood, who also left his DNA on the back seat of the Lexus. Against this strong physical evidence, a challenge to the sufficiency of the evidence is a dead bang loser. The proof of an agreement to commit carjacking—and only the most informal of one is necessary to establish the existence of a conspiracy—and the actual commission of the offense itself was not insufficient, it was overwhelming.

Patterson also claims that his conviction and sentence for both carjacking and carrying a firearm during and in relation to a crime of violence violates the Double Jeopardy Clause of the Fifth

Amendment. This argument must fail if it is clear that Congress intended cumulative punishments for the two crimes.

Section 924(c) of Title 18, United States Code, as amended in 1984, provides, in part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . .

18 U.S.C. § 924(c)(1). The federal carjacking statute in effect in August of 1994 provided in part:

> Whoever, possessing a firearm as defined in § 921 of this Title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force, violence or by intimidation, or attempts to do so, shall [be fined or imprisoned or both][.]

18 U.S.C. § 2119.[1] The argument on this point is that since he could not violate the carjacking statute in effect in August of 1994 without possessing a firearm, his sentencing for both carjacking and a violation of § 924(c) runs afoul of the Double Jeopardy Clause of the Constitution because it constitutes multiple punishments for a single offense.

■ Congress can provide multiple punishments for the same act without offending the Double Jeopardy Clause. Patterson argues, however, that no congressional intent to do so is present because the carjacking statute, enacted after § 924(c), fails to mention that statute. We now reject this argument and join every circuit

that has considered this point. The circuits have uniformly pooh-poohed double jeopardy challenges to convictions under both the carjacking and the firearms statutes. *United States v. Mohammed*, 27 F.3d 815, 820–21 (2d Cir.1994); *United States v. Johnson*, 32 F.3d 82, 85–86 (4th Cir.1994); *United States v. Singleton*, 16 F.3d 1419, 1425 (5th Cir.1994); *United States v. Johnson*, 22 F.3d 106, 108 (6th Cir.1994); *United States v. Jones*, 34 F.3d 596 (8th Cir.1994); *United States v. Martinez*, 49 F.3d 1398 (9th Cir.1995); *United States v. Overstreet*, 40 F.3d 1090 (10th Cir.1994); *United States v. Martin*, 38 F.3d 534 (11th Cir.1994). As the Tenth Circuit states in *Overstreet*:

> The mere fact that section 2119 was enacted after section 924(c)(1), but does not reference section 924(c)(1), does not alter our conclusion that Congress intended cumulative punishments under the two statutes. "Congress may make a plain statement of its intent to stack punishments in a specified class of crimes as it did in § 924(c)(1). Once Congress does that, it need not reiterate that intent in any subsequent statutes that fall within the previously defined class."

40 F.3d at 1095.

In the face of this compelling circuit authority contrary to his position, Patterson sought comfort in a certiorari grant by the Supreme Court in *Holloway v. United States*, —— U.S. ——, 118 S.Ct. 1558, 140 L.Ed.2d 791 (1998). Patterson's reliance on that case was misplaced. The case, involving an issue raised in *United States v. Arnold*, 126 F.3d 82 (2d Cir.1997), was resolved last month without any words of advice about the issue Patterson is pressing. *See Holloway v. United States*, —— U.S. ——, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999).

■ Patterson also challenges two upward departures ordered by the district

---

1. The statute was subsequently amended to omit the requirement of possession of a fire- arm and add the requirement of an intent to kill or injure.

judge. The first, an upward departure for using a firearm during the crime, was consistent with the regime described for those rare cases that fall under the second paragraph to application note 2 to U.S.S.G. § 2K2.4. To not apply an upward departure here would have actually given Patterson a shorter sentence *because* he was also convicted of a separate § 924(c) violation. The second upward departure, under U.S.S.G. § 5K2.8 [Extreme Conduct], was, we think, perfectly appropriate in this case, considering the cruel conduct of the defendant and the degradation suffered by Ms. Davis.

Finally, we are underwhelmed by Goode's claim that the district judge erred when he overruled a hearsay objection regarding testimony that part of the VIN number on the Lexus indicated that it was manufactured in Japan. We do not think the district judge committed an abuse of his discretion in the manner in which that testimony was received in evidence. For all these reasons, the judgments below are affirmed.