**UNITED STATES of America, Plaintiff,**

v.

**David "Bam" THOMPSON, Defendant.**

**No. 3:98–545–19.**

United States District Court, D. South Carolina, Columbia Division.

April 21, 1999.

Scarlett Wilson, Assistant United States Attorney, of Columbia, SC, for plaintiff.

John Hare, Assistant Federal Public Defender, of Columbia, SC, for defendant.

## ORDER

SHEDD, District Judge.

On January 13, 1999, a jury convicted defendant on three counts of being a felon in possession of a firearm (counts 1–3) and one count of possession of a "sawed-off" shotgun (count 4). This case is now before the Court on defendant's motion for judgment of acquittal on count 2.[1] The sole issue presented is whether the United States presented sufficient evidence at trial to prove beyond a reasonable doubt that the firearm charged in count 2—a .38 caliber revolver[2] which was not recovered and was not introduced into evidence—traveled in interstate commerce. For the reasons set forth below, the Court concludes that the United States met its burden of proof and, accordingly, the motion should be denied.

### I

The Court "must sustain [defendant's] conviction if the evidence, viewed in the light most favorable to the government, was sufficient for a rational trier of fact to find the essential elements of the crime

---

1. *See* Fed.R.Crim.P. 29(c).

2. For purposes of this motion, it is undisputed that defendant possessed this firearm in South Carolina.

beyond a reasonable doubt." [3] In reviewing the sufficiency of the evidence, the Court is "not entitled to weigh the evidence or to assess the credibility of witnesses, 'but must assume that the jury resolved all contradictions ... in favor of the Government.'" [4]

In order to establish defendant's guilt on count 2, the United States was, *inter alia*, required to prove, beyond a reasonable doubt, that defendant's possession of the .38 caliber revolver "was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence." [5] Expert testimony of a law enforcement officer is sufficient to establish the interstate nexus,[6] and the United States attempted to meet its burden by proving, with expert testimony, that the .38 caliber revolver was manufactured in a location other than South Carolina.[7]

### A.

In what seems to be the typical federal firearms prosecution, the United States has recovered the firearm and presents it as evidence during trial. The United States is then able to point to specific characteristics of the firearm (*e.g.*, manufacturer markings, serial number, unique type of firearm) which allow an expert witness to identify the place where the firearm was manufactured.[8] For example, in *Simmons*, the United States—by virtue of its recovery of the firearm—was able to specify its manufacturer (presumably from markings on the firearm). The United States then presented testimony from an ATF agent, in which the agent stated that based on his personal knowledge and experience, the specified manufacturer had never operated in Maryland (the state of the possession). The agent further stated that he had only known of one firearms manufacturer ever operating in Maryland. In affirming the verdict, the Fourth Circuit (with Judge Sprouse dissenting) concluded that this evidence was sufficient to establish the interstate nexus.[9]

However, recovery of the firearm and its production at trial with expert testimony does not always suffice to establish the interstate nexus. For example, in *United States v. Davis*,[10] the Fifth Circuit considered whether the United States had presented improper hearsay evidence to establish the firearm's interstate nexus. In concluding that the United States' proof was inadmissible, the Fifth Circuit rejected the contention that the admission of the evidence was harmless because the United States presented—in addition to the inadmissible evidence—the testimony of an agent which purportedly established the interstate nexus. The Fifth Circuit stated:

> Our reading of [the agent's] testimony is that he was able to say only that to his knowledge, Colt Industries maintained (at the time he was testifying) no manu-

3. *United States v. Jennings,* 160 F.3d 1006, 1012 (4th Cir.1998).

4. *United States v. Romer,* 148 F.3d 359, 364 (4th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1032, 143 L.Ed.2d 41 (1999) (citation omitted).

5. *United States v. Langley,* 62 F.3d 602, 606 (4th Cir.1995) (en banc), *cert. denied,* 516 U.S. 1083, 116 S.Ct. 797, 133 L.Ed.2d 745 (1996).

6. *United States v. Simmons,* 773 F.2d 1455, 1461 (4th Cir.1985) ("We conclude that Agent Parker's testimony as a firearms expert was sufficient to show the required interstate commerce nexus for the Savage rifle"). For a law enforcement officer to offer sufficient opinion testimony on this issue, he must be qualified as an expert witness. *United States v. Roy,* 1989 WL 87654, at *3–4 (4th Cir.1989) (Table at 881 F.2d 1070).

7. *See United States v. Crump,* 120 F.3d 462, 466 (4th Cir.1997) (proof of the manufacture of a firearm in another state satisfies the interstate nexus).

8. There are also cases in which the defendant stipulates that the firearm was manufactured out of state. *See, e.g., United States v. Hayes,* 919 F.2d 1262, 1263 (7th Cir.1990).

9. 773 F.2d at 1460–61.

10. 571 F.2d 1354 (5th Cir.1978).

facturing facilities in Georgia. He did not testify as to when this particular revolver was manufactured, nor did he make any attempt to say where Colt may have had a plant at that time.

To allow the jury to convict the appellant, several crucial inferences would have had to have been drawn from [the agent's] testimony alone. From his statement at the time of trial that to his knowledge, no Colt plant existed in Georgia, the jury would have had to infer that there was no plant there at the time of the gun's manufacture. The jury would then have had to draw the further inference that the gun was manufactured without Georgia and, finally, that the gun was shipped into Georgia in interstate commerce.[11]

### B.

It was not necessary for the United States to produce the firearm at trial,[12] and because the .38 caliber revolver possessed by defendant was not recovered, the United States did not introduce it into evidence. This latter fact presented the United States with a more difficult mode of proving the interstate nexus necessary to convict defendant on count 2.

In cases where the United States has not recovered the firearm and, consequently, does not produce it at trial, the United States often has the benefit of specific eyewitness testimony or other evidence which allows for an expert witness to identify where, and/or by whom, the firearm was manufactured. For example, in *United States v. Maxwell*,[13] the Fourth Circuit rejected a challenge to the United States' proof of interstate nexus in a 922(g) case where the uncontroverted eyewitness and expert testimony established that the defendant had possessed an Uzi in Virginia, and that Uzis are manufactured only in

Israel. Likewise, in *United States v. Galvan*,[14] the Fifth Circuit rejected the defendant's interstate nexus challenge where the United States introduced two bullet slugs recovered from the incident underlying the defendant's unlawful firearm possession, and an expert witness testified that based on the rifling patterns detected on the slugs, the gun that fired them could have been manufactured by any of four firms of which he was aware, all located outside of Texas (the state of the possession).

### C.

This case, however, presents what can only be described from the paucity of reported cases as an atypical situation where the United States did not recover the firearm, and it does not have the benefit of specific identifying evidence of the type noted above. While it is undisputed at this stage that the firearm defendant possessed was a .38 caliber revolver, that is the extent of the non-expert evidence presented concerning that firearm. Based on that evidence, the United States presented the expert testimony of ATF Special Agent Mark Kelly, who opined that it is "highly unlikely" that the .38 caliber revolver was manufactured in South Carolina. Agent Kelly grounded his opinion on the following facts: (1) during his service as a law enforcement officer, he had never seen a revolver that had been manufactured in South Carolina; (2) he consulted with another firearms expert who told him that in 24 years as a firearms expert, he had never heard of a revolver being manufactured in South Carolina; (3) he researched the reports of licensed firearms manufacturers between 1988 and 1997 (the year prior to defendant's possession) and found that of the approximately four million revolvers that were manufactured, none was

**11.** *Id.* at 1358 n. 7.

**12.** *See United States v. Redd,* 161 F.3d 793, 797 (4th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 1371, 143 L.Ed.2d 531 (1999).

**13.** 1995 WL 391982, at *5–6 (4th Cir.1995) (per curiam) (Table at 60 F.3d 826).

**14.** 949 F.2d 777, 783–84 (5th Cir.1991).

made in South Carolina; and (4) no licensed firearm manufacturer operating in South Carolina between 1988 and 1997 reported manufacturing revolvers.

Defendant contends that notwithstanding Agent Kelly's ultimate opinion that it is "highly unlikely" that the .38 caliber revolver was manufactured in South Carolina, Agent Kelly's testimony is insufficient to establish that fact beyond a reasonable doubt. Defendant points to the fact that although Agent Kelly testified that he knew of no unlicensed firearms manufacturers operating in South Carolina, he conceded that it was possible (but "extremely expensive") that someone—licensed or otherwise—could have manufactured the .38 caliber revolver in this state. Moreover, Agent Kelly testified that although ATF records of firearms manufactured before 1988 did exist (in manual, as opposed to computer, form), he did not research those records. Agent Kelly also acknowledged that he did not know whether or not there were any licensed manufacturers of revolvers in South Carolina prior to 1988.

There are relatively few reported cases addressing the narrow issue presented here. From defendant's perspective, the leading case is *United States v. Jones.*[15] In that case, the United States, having not recovered the handgun charged in the indictment, attempted to prove interstate nexus in a § 922 case solely by the testimony of an FBI agent, who stated that handguns were not then being manufactured in New York (the state of the possession). The jury convicted the defendant, and on motion for acquittal based on lack of proof of an interstate nexus, the district court upheld the verdict. The district court found the agent's testimony sufficient to prove the interstate commerce element because of the inference that if handguns were not then being manufactured in New York state, any handgun then possessed in New York must have been manufactured outside the state.

On appeal, the Second Circuit vacated the conviction. The Second Circuit first recognized that handguns were at one time manufactured in New York state, and for this reason it found the district court's inference to be a non sequitur. Further, because the United States conceded that there was a "slight possibility" that the handgun in that case was made in New York, the Second Circuit found the agent's testimony to be insufficient to prove that the handgun traveled in interstate commerce.[16]

*United States v. Overstreet*[17]—which involves evidence slightly different from *Jones,* but remarkably similar in some respects to this case—is a case where the United States successfully established interstate nexus of a firearm. In *Overstreet,* the firearm had not been recovered, and the only trial evidence concerning the identity of the firearm was eyewitness testimony that it was a revolver. Based on this evidence, the United States presented an expert witness who testified "generally that there [were] not, and [had] never been, any manufacturers of revolvers in Oklahoma."[18] Accordingly, the expert opined that any revolver used during a carjacking in Oklahoma necessarily travelled in interstate commerce.

On appeal, the defendant argued that the district court erred by admitting the

---

15. 16 F.3d 487 (2d Cir.1994).

16. *Id.* at 491–92. At least one district court in the Second Circuit has followed the *Jones* rationale. *See United States v. Chin,* 910 F.Supp. 889, 895 (E.D.N.Y.1995) ("Simply indicating that the manufacturers of the bullets and shell casings involved presently conduct their operations outside of New York is not sufficient. Perhaps such items were at one time manufactured within the State of New York, perhaps not. As to that issue, and Agent Annunziato's possible knowledge in that regard, the record is silent").

17. 40 F.3d 1090 (10th Cir.1994), *cert. denied,* 514 U.S. 1113, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995).

18. 40 F.3d at 1095.

expert testimony because the firearm was not sufficiently identified for the expert to form an opinion on the interstate nexus issue. The Tenth Circuit rejected this contention, holding that the "testimony that a revolver ... was involved in the [underlying crime] provided sufficient foundation for [the expert's] testimony that no revolvers are manufactured in Oklahoma and, thus, the gun must have travelled in interstate commerce." [19]

## II

In a nutshell, the Court's function here is to determine whether Agent Kelly's testimony, viewed in the light most favorable to the government, is sufficient for a rational trier of fact to find beyond a reasonable doubt that the .38 caliber revolver was manufactured somewhere other than South Carolina. While the cases discussed above are instructive, none is precisely on point.

### A.

Defendant relies primarily on *Jones,* but that case is readily distinguishable from this one because the only evidence presented by the United States in that case was the agent's testimony that there were no handgun manufacturers in the state *at that time.* The agent's resulting opinion that the handgun therefore must have been manufactured out of state was, as the Second Circuit noted, a non sequitur. Unlike the agent in *Jones,* Agent Kelly's testimony was much more extensive.[20]

The United States relies on *Maxwell,* but that case is also readily distinguishable because the evidence in that case established specifically that the firearm was an Uzi which could only have been manufac-

tured in Israel. Here, the evidence establishes that the firearm was a .38 caliber revolver, but there is no evidence to establish that firearms of this type are made only by certain manufacturers or only in certain locations.

Although not cited by the United States, *Overstreet* is similar factually to this case, and it is superficially helpful to the United States. As in this case, the evidence in *Overstreet* established only that the firearm was a revolver, and the Tenth Circuit found this limited description—coupled with expert testimony—sufficient to establish interstate nexus beyond a reasonable doubt. However, the distinguishing fact in *Overstreet* is that the expert testimony in that case established that revolvers had "never" been manufactured in Oklahoma (the state of possession). Agent Kelly could not make this same assertion.

### B.

The strongest basis defendant has to support his motion is Agent Kelly's concession that it was possible that someone could have manufactured the .38 caliber revolver in this state. This concession was made in light of Agent Kelly's testimony that he did not research all of the available ATF records, and he did not know whether there were any licensed manufacturers of revolvers in South Carolina prior to 1988. While the Second Circuit in *Jones*-attached significance to a similar concession, the Court finds that the simple fact that the .38 caliber revolver possibly could have been manufactured in South Carolina is not sufficient to compel the result that the United States did not present evidence sufficient for a rational trier of fact to find

---

19. *Id.*

20. The United States argues at page 6 of its memorandum that *Jones* is also distinguishable because in that case it conceded that handguns had been manufactured in New York at some time. The United States maintains that it has not made a similar concession in this case. Notably, however, the United States actually states that it "does not concede that any revolvers were manufactured in South Carolina *this century* " (emphasis added). While the Court cannot necessarily take from this statement that the United States concedes that revolvers were made in South Carolina prior to this century, that certainly is an inference which may reasonably be drawn from it.

an interstate nexus beyond a reasonable doubt.

In *Galvan*, the agent conceded the "possibility" that the firearm could have been made in the state of possession (Texas). The Fifth Circuit found this concession to be insufficient to require judgment of acquittal:

> There is only "a possibility" that the weapon could have been manufactured in Texas. And, viewing [the agent's] testimony as a whole, we do not find that he was overly tentative in his estimation that the weapon was made outside Texas. The jury had ample evidence on which it could find that the weapon had been transported in interstate commerce.[21]

In *United States v. Bennett*,[22] a case in which the firearm was not recovered, testimony established that the firearm was a .22 caliber "Single–Six" made by Sturm Ruger and that Sturm Ruger was an out-of-state manufacturer. In challenging the interstate nexus, the defendants argued—as defendant does here—that the gun could have been a replica fashioned by an in-state gunsmith. The First Circuit rejected this argument:

> This remote possibility had only the most tenuous evidentiary support, namely, a witness or two said such a gun could be fabricated but at significant cost. The overwhelming probability was that the gun was authentic and had been transported—at some time—in interstate commerce. Certainly the jury's conclusion that the gun was genuine and had previously traveled in commerce was not irrational.[23]

### C.

It is self-evident that proof beyond a reasonable doubt does not require proof beyond all doubt. Unquestionably, Agent Kelly's testimony leaves open some possibility that the .38 caliber revolver was manufactured in South Carolina. However, Agent Kelly testified—as a firearms expert—that based on his experience, his conversations with other firearms experts, and his research, it is "highly unlikely" that the .38 caliber revolver was manufactured in South Carolina. This testimony, when viewed in favor of the United States, permits a rational trier of fact to find beyond a reasonable doubt that the .38 caliber revolver was manufactured somewhere other than South Carolina. Accordingly, defendant is not entitled to judgment of acquittal.

### III

Based on the foregoing, the Court hereby **ORDERS** on this the 21st day of April, 1999, at Columbia, South Carolina, that defendant's motion for judgment of acquittal be **DENIED**.

---

21.   949 F.2d at 784.

22.   75 F.3d 40 (1st Cir.), *cert. denied,* 519 U.S. 845, 117 S.Ct. 130, 136 L.Ed.2d 79 (1996).

