RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0317p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 20-5104

HARRY FRENCH,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:18-cr-20343-2—Mark S. Norris, Sr., District Judge.

Decided and Filed: September 30, 2020

Before: ROGERS, SUTTON, and STRANCH, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Dewun R. Settle, Memphis, Tennessee, for Appellant. Elizabeth Rogers, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

ROGERS, Circuit Judge. Harry French was convicted by a jury of carjacking and possession of a firearm in furtherance of a crime of violence. French appeals the sufficiency of the evidence supporting his convictions. But French's challenge on appeal to the credibility of trial witnesses is not a valid basis for overturning his conviction, and in any event, sufficient evidence supported a finding of guilt. French's second contention that he cannot be legally convicted of both offenses under the Double Jeopardy Clause is foreclosed by our decision in

*United States v. Johnson*, 22 F.3d 106 (6th Cir. 1994). Finally, the district court properly applied the sentencing enhancement in U.S.S.G. § 3C1.1 for obstruction of justice on the basis of French's attempt to intimidate a witness by posting a message on Facebook.

In August 2017, French, along with Dequan Blackmon and DaShawn White, confronted Teresa Lee-Moore at gunpoint as she was driving out of her apartment complex. French demanded that Lee-Moore get out of her car and, after Lee-Moore complied, held a gun to her head. The three men then proceeded to drive away in Lee-Moore's vehicle, a white 2015 Dodge Journey. Less than three weeks later, the three men committed a second carjacking, this time against Robert Featherson, an elderly man who lived in a retirement community. The men approached Featherson as he was walking to his apartment from his car, a 1991 Jeep Cherokee. Blackmon brandished a firearm, while French hit Featherson over the head with a different firearm. Blackmon took Featherson's keys and all three men drove away in Featherson's car.

Lee-Moore's and Featherson's cars were later recovered by law enforcement. A fingerprint examiner identified French's fingerprints on the two front doors of Lee-Moore's vehicle, but fingerprints found in Featherson's vehicle were unidentifiable. French and Blackmon were charged with carjacking, in violation of 18 U.S.C. § 2119,[1] as well as using and brandishing a firearm during and in relation to a crime of violence (carjacking), in violation of 18 U.S.C. § 924(c).[2] Blackmon pleaded guilty, while French proceeded to trial.

At trial, the Government called Blackmon and White, who each testified regarding French's involvement in the charged carjackings. The jury also heard evidence from the two victims, Lee-Moore and Featherson. At the close of the Government's case, French moved for a judgment of acquittal, which the district court denied. French did not present any evidence. The jury convicted French on the charges relating to the two carjackings described above. The jury acquitted French of charges relating to a third carjacking alleged in the indictment.

---

[1]18 U.S.C. § 2119 provides in relevant part that "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall [be guilty of a crime]."

[2]18 U.S.C. § 924(c)(1)(A) imposes heightened penalties for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."

During the sentencing phase, the probation office filed its presentence report on September 17, 2019, in which it recommended a total sentence of 240 months' imprisonment. Lee-Moore provided a victim impact statement, which was included in the presentence report. The Government did not object to the presentence report, and advised the court on September 26, 2019, that it did not anticipate calling any witnesses at sentencing. Subsequently, the Government learned that French posted a message on Facebook in October 2019—shortly before his originally scheduled sentencing hearing that was set for October 30, 2019—in which he referred to Blackmon as a "rat." French also attached to the post pictures of portions of Blackmon's written statement to the police that implicated French in the carjacking incidents. French "tagged" Blackmon in the post, which had the effect of making the post more easily visible to Blackmon's "friends" on Facebook. The Facebook post prompted a flurry of responses from others on Facebook criticizing Blackmon for cooperating with law enforcement. One of the commenters warned French to take down the post because Blackmon would report it to law enforcement. French responded to this comment by stating, "I'm good ain't nobody treating his [Blackmon's] life he'll be ok."[3] Law enforcement determined that French had posted the message and pictures on Facebook from a contraband cell phone while in custody. In light of French's post-trial conduct, the probation office recommended on October 28, 2019, that the court apply the two-level enhancement for obstruction of justice in U.S.S.G. § 3C1.1. The court reset the sentencing hearing date to November 21, 2019, to allow the parties more time to review this new information, but proceeded with victim testimony from Featherson on October 30.

French objected to the imposition of the enhancement both in written submissions to the court and orally at the rescheduled sentencing hearing. Defense counsel argued at the sentencing hearing that the Facebook post did not contain any direct threats and that in posting the message, French "was not trying to intimidate, threaten or any of those things when it came to Mr. Dequan Blackmon." Instead, in counsel's view, French was "merely . . . exercising his [c]onstitutional rights to express his displeasure at [Blackmon's testimony] having happened." French's counsel further contended that, because the message was posted after Blackmon had testified at trial,

---

[3]In his response to the government's sentencing memorandum, French phrased "treating" as "[threatening]."

there was neither intended nor actual impact on the extent or nature of Blackmon's cooperation with law enforcement.  The court at the sentencing hearing deferred deciding the sentencing enhancement issue and ordered briefing.  After both sides submitted briefs, the court held a second sentencing hearing, at which it announced that it would apply the sentencing enhancement.  The court reasoned that the evidence "clearly established that the Defendant, French, had in his possession an illicit device which was used for the purpose of posting what, although there's some dispute about the extent of intimidation, could only be construed as intimidating posts."  The court went on to state that "[§] 3C1.1 applies to conduct that, quote, can be reasonably construed as a threat.  And the Court finds that the United States has, by a preponderance of the evidence, established that."

As a result of the enhancement for obstruction of justice, French's advisory Sentencing Guidelines range increased from 63–78 months to 78–97 months.  The district court imposed a sentence of 246 months:  78 months' imprisonment on each of the two carjacking counts, to be served concurrently, and 84 months' imprisonment on each of the two § 924(c) counts, to be served consecutively.  French timely appealed.

French has not presented a valid basis for reversal with respect to the sufficiency of the evidence at trial.  In arguing that the district court erred by not granting his motion for judgment of acquittal, French attacks only the credibility of the witnesses at his trial.  French contends, for instance, that "[t]he testimony of the co-defendants lacked credibility because each witness had a motive to give testimony that was less than truthful."  This argument disregards the limited scope of review applicable to sufficiency-of-the-evidence claims on appeal.  "In making a sufficiency-of-the-evidence determination, we must draw all reasonable inferences in favor of the government, and we will not 'weigh the evidence, consider the credibility of witnesses, or substitute our judgment for that of the jury.'"  *United States v. Ward*, 957 F.3d 691, 695-96 (6th Cir. 2020) (alteration omitted) (quoting *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994)).

In any event, substantial and convincing evidence supported defendant's conviction.  A conviction for carjacking requires proof that "the defendant, (1) with intent to cause death or serious bodily harm, (2) took a motor vehicle, (3) that had been transported, shipped, or received

in interstate or foreign commerce, (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). To prove a violation of 18 U.S.C. § 924(c)(1)(A), it is enough for the Government to prove that defendant committed a crime of violence, and that during or in relation to the crime of violence, defendant used, carried, or brandished a firearm. *See United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002). Carjacking constitutes a crime of violence under § 924(c). *United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019).

Both of French's accomplices testified that French used a firearm to threaten and attack victims in the course of taking their cars. Those accounts were largely corroborated by the testimony of the victims themselves. In addition, physical evidence in the form of fingerprints linked French to at least one of the stolen vehicles. The parties stipulated to the fact that the stolen vehicles had traveled in interstate commerce. The jury could therefore rationally conclude that the Government proved each element of the charged offenses.

French's second challenge to his convictions, based on double jeopardy, also fails. French asserts that carjacking under 18 U.S.C. § 2119 and brandishing a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c) both "contemplate[] the potential use of a firearm" and therefore "Mr. French is being sentenced/convicted twice for the same act in violation of his Fifth Amendment rights under the United States Constitution." We rejected this argument in *United States v. Johnson*, 22 F.3d 106, 108 (6th Cir. 1994). In that case, we explained that:

> Armed carjacking is a specific crime of violence carrying a nonmandatory sentence. Section 924(c), written in much more general language than the carjacking statute, simply enhances punishment for the same violent conduct. For reasons stated at length by the Fifth Circuit, reasons we need not repeat here, Congress wanted to make sure in § 924(c) that all federal crimes of violence committed with a firearm are enhanced, even though the other more specific crime of violence also requires the presence of a firearm. Congress intended to impose additional punishment for the same conduct, and the Double Jeopardy Clause does not proscribe multiplying the punishment in this way.

*Id.* at 108. The analysis in *Johnson* is on point and dispositive in this case.[4] Accordingly, French was properly convicted under both § 2119 and § 924(c).

Finally, the district court properly imposed the two-level enhancement in the Sentencing Guidelines for obstruction of justice. Section 3C1.1 of the Guidelines provides that a defendant's offense level is to be raised by two points whenever the defendant "(1) willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." The commentary to the Guideline states that conduct falling within the scope of the rule includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1 comment. n.4(A).

"We review *de novo* the district court's legal interpretations of the Sentencing Guidelines, and we review the district court's factual conclusions for clear error." *United States v. Parsons*, 798 F. App'x 922, 927 (6th Cir. 2020). However, as we recently observed, the proper standard of review for "the application of the guideline to the facts" is less apparent. *United States v. Thomas*, 933 F.3d 605, 608–10 (6th Cir. 2019). Following *Thomas*'s lead, we do not resolve this question here because French's challenge fails even under *de novo* review. *Id.* at 610; *see also United States v. Fisher*, No. 19-1220, 2020 WL 4814115, at *9 (6th Cir. Aug. 19, 2020).

The district court did not err in determining that French posted on Facebook with the intent to intimidate his co-defendant or others who might further cooperate with law enforcement. *See United States v. Kamper*, 748 F.3d 728, 744 (6th Cir. 2014) (describing scope of review of district court's factual findings supporting the imposition of the enhancement in

---

[4]At the time *Johnson* was decided, the carjacking statute contained as an element the possession of a firearm. *See* 22 F.3d at 107. Instead of requiring the possession of a firearm, the present version of the statute requires "intent to cause death or serious bodily harm." 18 U.S.C. § 2119. Thus, the conduct proscribed in the carjacking statute overlaps with that in § 924(c) less now than when we decided *Johnson*, thereby further strengthening the reasoning in *Johnson*. *Cf. United States v. Jolivette*, 257 F.3d 581, 585 (6th Cir. 2001) (comparing *Johnson* and noting that the absence of a firearm element in the bank robbery statute, 18 U.S.C. § 2113, provides additional support for the imposition of a consecutive § 924(c) sentence).

§ 3C1.1). The Facebook posts accused Blackmon of being a "rat" and "snitching for time cuts," and included discovery documents showing Blackmon's cooperation with authorities. The posts were available for French's Facebook "friends" to see and conveyed animus for anyone cooperating with law enforcement against French. The threat therefore extended beyond Blackmon and could reasonably be construed as a threat against anyone who would dare cooperate with the Government and cross French, including French's victims. "For the purposes of the § 3C1.1 enhancement, a defendant has obstructed justice when his behavior 'can be reasonably construed as a threat.'" *United States v. Robinson*, 813 F.3d 251, 263 (6th Cir. 2016) (quoting *Kamper*, 748 F.3d at 744).

By posting on Facebook, French "attempted to obstruct . . . the administration of justice with respect to the . . . sentencing," as required by § 3C1.1. Section 3C1.1 covers indirect threats delivered through an intermediary, such as Facebook, regardless of whether an intended recipient learns of the threat or actually feels intimidated by the threat. *See Parsons*, 798 F. App'x at 928. French posted on Facebook just days before he was to be sentenced, and the court reasonably inferred that French was attempting to influence witnesses who might testify at the upcoming hearing. Although French contends that he did not anticipate that Blackmon would testify during his sentencing, and so he could not have had a reason to intimidate Blackmon through his Facebook posts, this argument ignores the public nature of French's threat and the influence such public threats can have on other potential witnesses.

French readily could have anticipated that his victims would testify at sentencing, just as they had at trial, and that his posts would intimidate those who would dare cooperate with law enforcement in the lead up to his sentencing. One victim, Teresa Lee-Moore, had already provided a written victim impact statement that was included in the original presentence report filed before French made his threatening Facebook posts. The presentence report was available to the parties, including French. Thus, French could see that one of his victims had provided a victim impact statement. French was also aware that both of his victims had testified at trial. French therefore had reason to expect one or both victims to potentially testify at his sentencing. Indeed, Robert Featherson testified at the October 30 hearing, provided a victim impact statement that was included in an addendum to the presentence report filed on November 12, and

regularly attended the sentencing hearings. Accordingly, French's argument that he could not have intended to obstruct justice unless he thought that Blackmon would testify at sentencing ignores the potential chilling effect of his threatening public statements on his victims, who had been cooperating with the Government and could have learned of the statements that had been made openly on Facebook. The district court therefore reasonably concluded that French's Facebook posts acted as a threat to those who might assist law enforcement to French's detriment.

The Government's assertion on September 26, 2019—prior to French's threatening Facebook posts—that it did not anticipate calling any witnesses during sentencing does not weaken our conclusion. Victims can choose to attend a defendant's sentencing and speak at the sentencing without being called to testify by the Government. *See* Fed. R. Crim. P. 32(i)(4)(B). The Government's statement that it did not anticipate calling any witnesses at sentencing therefore did not foreclose the possibility that someone, such as one of the victims, would speak at French's sentencing. As discussed, Featherson testified at the October 30 hearing and both victims ultimately provided victim impact statements. Moreover, the Government's statement that it did not "anticipate" calling a witness at sentencing did not preclude it from calling someone at sentencing.

The judgment of the district court is affirmed.