NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0023n.06

No. 20-5241

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jan 11, 2021 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DARRYLE COOPER, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: KETHLEDGE, THAPAR, and READLER, Circuit Judges.

KETHLEDGE, Circuit Judge. Darryle Cooper challenges the sufficiency of the evidence supporting his convictions for various drug-trafficking offenses. He also argues that the government failed to disclose exculpatory GPS tracking data and video footage. We reject his arguments and affirm.

I.

In November 2014, an informant told Louisville police that Milton Polk was supplying heroin to two local drug dealers, Ronald Williams and Gary Ross. Police observed a meeting between Williams, Ross, and Polk. A GPS tracking device that they placed on Williams's Chevy truck revealed that Williams frequently visited an apartment on Second Street and a house on Phyllis Avenue. Police also followed Polk from the house on Phyllis Avenue to a house that Cooper rented on Commander Drive. They began tracking Cooper's phone, and hid cameras on

street poles overlooking the Commander Drive house and the parking lot at the Second Street apartment.

In March 2015, Cooper drove to the Commander Drive house in a black Toyota Corolla. Two days later, Ross called Polk and asked for heroin; at 1:44pm that same day, the camera at Commander Drive recorded the Corolla leaving the Commander Drive house. Thirteen minutes later, the camera at the Second Street apartment recorded a black Toyota Corolla stopping in the parking lot. Williams took a black duffel bag from the car's trunk and walked into the apartment. The next day, police saw Williams carry the bag out of the apartment and put it in the trunk of a different car. They stopped that car and found heroin inside the bag.

That same day, police and DEA agents searched the Commander Drive house. The second floor was empty of furniture. The first floor had a master bedroom, guest bedroom, and kitchen. In the master bedroom, they found a loaded Taurus pistol on top of a nightstand; behind a locked closet door, they found a money counter and a floor safe containing a ledger and eight heat-sealed bundles of cash, totaling over $276,000. In the guest bedroom, they found a Hi-Point pistol under a mattress. In the kitchen, they found a paper shredder, a heat-sealer and sealing bags, rubber gloves, saran wrap, rubber bands, and axle grease. The police and DEA then searched the garage, where they found Cooper's Toyota Corolla with a stack of cash inside (totaling several thousand dollars). They also found a Ford Expedition with a compartment hidden behind the car's radio. Officers had previously seen Polk driving that Expedition, which was registered to Polk's girlfriend, Ebony Burrus.

A grand jury thereafter indicted Cooper on three counts: conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A); possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A); and possession

of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Polk, Williams, and Burrus pleaded guilty to the same conspiracy charge and agreed to testify against Cooper. At trial, a jury convicted Cooper on all three counts. The district court sentenced Cooper to 180 months' imprisonment. This appeal followed.

II.

A.

Cooper challenges the sufficiency of the evidence supporting each of his convictions. We must uphold his convictions if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Cooper's first conviction—conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846—required the government to prove three elements: first, that an agreement to violate the drug laws existed; second, that Cooper knew of the agreement; and third, that Cooper knowingly joined the agreement. *See United States v. McReynolds*, 964 F.3d 555, 562 (6th Cir. 2020).

Cooper argues only that he did not join Polk, Williams, and Burrus in their conspiracy to sell heroin. But all three of them testified to the contrary. Specifically, Williams testified that Cooper delivered heroin to him at the Second Street apartment in his Corolla; Burrus testified that she saw Cooper count cash from heroin sales in the kitchen of the Commander Drive house; and Polk testified that Cooper used the Taurus and Hi-Point pistols to protect his heroin and cash. Cooper contends we should reject all this testimony because, he says, it is uncorroborated. But he concedes that co-conspirator testimony need not be corroborated to support his conviction. Blue Br. at 22; *see also United States v. Ledbetter*, 929 F.3d 338, 355 (6th Cir. 2019). The jury was

entitled to credit the testimony of Cooper's co-conspirators. *See United States v. French*, 976 F.3d 744, 747 (6th Cir. 2020). And that testimony alone was enough to support his conspiracy conviction. *See Ledbetter*, 929 F.3d at 355.

Moreover, there was in fact evidence to corroborate the testimony of Polk, Williams, and Burrus. The jury heard a phone call in which Ross asked for more heroin. It then viewed a series of photos from which it could reasonably conclude that Cooper delivered heroin to Ross at the Second Street apartment. There was also evidence that, in the house Cooper rented, officers found a ledger, money counter, over $276,000 of cash in sealed bundles (along with a heat-sealer and sealing bags), rubber gloves, saran wrap, rubber bands, axle grease, and a car with a secret compartment. A DEA agent testified that drug dealers commonly use these objects for trafficking (axle grease, for example, disguises the smell of heroin). Cooper's sufficiency challenge to his conspiracy conviction is meritless.

Cooper's second conviction—for possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)—required the government to prove three elements: first, that Cooper possessed heroin; second, that Cooper intended to (or did) distribute that heroin; and third, that Cooper did so knowingly. *See United States v. Benton*, 957 F.3d 696, 701 (6th Cir. 2020).

Cooper's challenge to this conviction fails because Williams testified that Cooper drove the Corolla from the Commander Drive house to the Second Street apartment with a black duffel bag full of heroin. That testimony alone was enough for the jury to convict on this count. *See French*, 976 F.3d at 747.

Cooper's third conviction—possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)—required the government to prove two elements:

first, that Cooper possessed a gun; and second, that Cooper possessed that gun for the purpose of aiding his heroin sales. *See United States v. Maya*, 966 F.3d 494, 499-500 (6th Cir. 2020).

Cooper concedes that he owned the Taurus pistol that authorities found on the nightstand in his master bedroom. Blue Br. 29. And Polk testified that Cooper owned the Taurus pistol to protect his heroin and cash. Moreover, officers found the pistol on Cooper's nightstand, fully loaded, in the same room where he had over $276,000 in cash (behind a locked closet door and in a floor safe). Ample evidence supported this conviction. *See United States v. Penney*, 576 F.3d 297, 315 (6th Cir. 2009).

B.

Cooper also presents a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, he argues that the government failed to disclose GPS tracking data from his cell phone and video footage from the Second Street apartment's pole camera. Although the government gave Cooper the GPS data and video footage after his trial, his trial counsel never moved for a new trial. Nor did he make this evidence part of the record in the district court. We thus cannot evaluate the merits of this claim. The claim is therefore better addressed in the context of a petition under 28 U.S.C. § 2255. *Cf. United States v. Garcia-Meza*, 315 F.3d 683, 687 (6th Cir. 2003).

\* \* \*

The district court's judgment is affirmed.