NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0268n.06

Case No. 22-3593

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td>)</td><td rowspan="2">FILED<br>Jun 12, 2023<br>DEBORAH S. HUNT, Clerk</td></tr>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE SOUTHERN DISTRICT OF</td></tr>
<tr><td>KAMAR LAQUAN COX,</td><td>)</td><td>OHIO</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>OPINION</td></tr>
</table>

Before: GILMAN, BUSH, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** A jury found Kamar Cox guilty of both robbery and being a felon in possession of a firearm. At sentencing, the district court applied a Guidelines enhancement for possessing a firearm during the robbery and a second enhancement for obstruction of justice. The court sentenced Cox to 102 months' imprisonment, near the bottom of his Guidelines range. Cox challenges the two enhancements on appeal. We affirm.

**I.**

Kamar Cox offered to sell a firearm to a confidential government informant. The firearm was either an AR or AK rifle. At the direction of an agent from the federal Bureau of Alcohol, Tobacco, Firearms and Explosives, the informant arranged to meet Cox a few days later. The agent gave the informant $500 to purchase the rifle at the controlled buy.

Cox and the informant arranged to meet in an apartment parking lot. As the informant drove into the lot, he spotted Cox's vehicle. The informant pulled alongside Cox's vehicle and then left his own. As he did, the informant noticed a Glock pistol sitting on the center console of Cox's vehicle. After some back and forth, Cox indicated that the pair needed to go inside to make the exchange. So after reparking their cars, both the informant and Cox exited their vehicles.

The deal did not go according to plan, however. According to the informant, Cox pulled out the Glock and pointed it at the informant while the two of them were walking around the building. The informant ran. Cox gave chase, eventually catching up to the informant. Cox then demanded the "five." Believing that to mean the $500 to be exchanged as part of the controlled buy, the informant handed the cash over to Cox. Cox then drove away.

The informant's testimony, however, seemingly wavered at times. Although he testified that Cox pulled the Glock gun on him as the two walked around the building, he likewise testified that he never saw Cox grab the Glock from the car or possess it in his hands, waistband, or pockets as Cox walked away from his car or at the time the informant handed the money over to Cox. The informant likewise confirmed that the Glock was never seen on the video footage once he and Cox left their vehicles to walk around the building.

From this series of events, a grand jury eventually charged Cox with: (1) robbing a person exercising lawful control over money of the United States, in violation of 18 U.S.C. § 2114(a), with a possible enhanced maximum punishment for the aggravated offense of jeopardizing the life of the victim by using a dangerous weapon; (2) using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Cox pleaded not guilty to the charges, and the case was set for trial.

On the eve of the informant's trial testimony, Cox saw the informant in the courthouse hallway. Cox called him a "rat" and a "clown." The next day, when the informant took the stand, Cox abruptly interjected: "Come on, man. You going to sit up there, and let them take my life from me, bro." Against the court's directives, Cox continued: "Come on, bro. You going to sit up and listen to them, and let them cut you, bro. Come on, man." After a brief recess, the informant resumed his testimony. While on the stand, the informant told the jury that Cox had sent letters to his grandparent's home as well as a letter to the informant through a third party. In each letter, according to the informant, Cox was trying to convince the informant to "[n]ot come to court."

The jury convicted Cox of robbery and being a felon in possession of a firearm. On the robbery count, however, the jury did not make the special finding that Cox jeopardized the informant's life by using a dangerous weapon. The jury also acquitted Cox of using and carrying a firearm in relation to the robbery.

At sentencing, the court applied a five-level enhancement under U.S.S.G. § 2B3.1(b)(2)(C), which applies when a "firearm was brandished or possessed" during a robbery. After noting Cox's objection that he had not "brandished" a firearm, the district court overruled it. The district court explained that the enhancement applies "whether the firearm was brandished or possessed," and that it was "clear" that, "at a minimum," the firearm was "possessed." Over objection, the court also applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Factoring in those enhancements, the district court calculated Cox's Guidelines range as 100 to 125 months. The district court imposed a sentence near the range's low end: 102 months. Cox appealed his sentence, challenging the two enhancements.

**II.**

Cox's challenges are for procedural reasonableness. *United States v. Sands*, 4 F.4th 417, 420 (6th Cir. 2021). In this setting, we review de novo the district court's legal conclusions in imposing the enhancements, and its factual findings under the clear-error standard. *United States v. Moerman*, 233 F.3d 379, 380 (6th Cir. 2000); *United States v. Rosales*, 990 F.3d 989, 998 (6th Cir. 2021). With respect to the obstruction enhancement specifically, we have "sent mixed messages" as to whether the district court's application of the facts is reviewed de novo or with "due deference." *Rosales*, 990 F.3d at 998 n.2 (citation omitted). We can set that aside, however, because the application of the two enhancements here was proper even under de novo review.

Consider first the five-level enhancement for "brandish[ing] or possess[ing]" a firearm during the robbery. U.S.S.G. § 2B3.1(b)(2)(C). Cox argues that the district court erred in applying this enhancement for brandishing because the jury acquitted him of such conduct. This is so, Cox says, because relying on acquitted conduct in sentencing violates the Fifth and Sixth Amendment. *See Jones v. United States*, 574 U.S. 948, 948 (2014) (mem.) (Scalia, J., dissenting from denial of certiorari) ("We should grant certiorari to put an end to the unbroken string of cases disregarding the Sixth Amendment[.]"). There may be something to his argument. *See, e.g.*, *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (per curiam) (Kavanaugh, J., concurring in the denial of rehearing en banc) ("Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial."); *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014) (Gorsuch, J.) (questioning whether the Constitution allows a district judge to increase a defendant's sentence "based on facts the judge finds without the aid of a jury or the defendant's consent"). But, as Cox recognizes, Supreme Court and circuit precedent foreclose his argument.

4

*United States v. Hills*, 27 F.4th 1155, 1196 n.24 (6th Cir. 2022) (citing *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam)).  Perhaps his argument will someday gain traction with the Supreme Court or with the Sentencing Commission.  *Cf.* Petition for Writ of Certiorari, *McClinton v. United States* (No. 21-1557); The Hon. Carlton W. Reeves, Chair, U.S. Sentencing Comm'n, *Remarks at the Public Meeting of the United States Sentencing Commission* 23 (Apr. 5, 2023), available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_remarks.pdf (noting that the Sentencing Commission "intend[s] to resolve questions involving acquitted conduct next year").  For now, we note only that Cox has preserved this currently foreclosed argument.

Cox, however, has a more immediate problem.  His enhancement was not based on "brandishing" his firearm during the robbery.  Rather, the district court explicitly rooted the enhancement on Cox's "possess[ion]" of the weapon.  *See United States v. Oliver*, 84 F. App'x 595, 596 (6th Cir. 2003) (order).  As the district court saw things, "it was clear" from the trial evidence that "at a minimum, the firearm was possessed."  And possession was not part of the statutory charge—"us[ing]/carrying of a firearm"—that the jury acquitted Cox of.

Attempting to cover all bases, Cox also attacks the propriety of the enhancement for possession.  But he does so only in his reply brief.  Arguments raised for the first time in reply are forfeited.  *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021).

That leaves Cox's challenge to the obstruction enhancement.  The enhancement applies to one who "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice."  U.S.S.G. § 3C1.1.  We see no error in the district court's application of that enhancement to Cox.  Chief among his obstructive behavior, Cox called the confidential informant a "rat" in the courthouse hallway on the eve of the informant's testimony.  We previously blessed

the enhancement's application in a similar setting—where a defendant called a testifying witness a "rat" in a Facebook post "just days" before sentencing. *United States v. French*, 976 F.3d 744, 749–50 (6th Cir. 2020) (citation omitted). There, as here, the defendant's language could be "reasonably construed as a threat" to a "witness[] who might testify at the upcoming hearing." *Id.* at 749 (citation omitted). And, keep in mind, this threat was not the full scope of Cox's obstructive conduct. He interrupted the informant's trial testimony, addressing him directly. *Cf. United States v. Robinson*, 813 F.3d 251, 263 (6th Cir. 2016) (upholding the obstruction enhancement after a defendant confronted the potential witnesses outside the courthouse). He also sent letters to the informant's grandparents and to the informant to dissuade the informant from coming to court. *United States v. Wallace*, 600 F. App'x 322, 330 (6th Cir. 2015) (upholding the obstruction enhancement where the defendant's text messages were designed to "intimidate" a witness). All told, ample evidence supports the obstruction enhancement.

Cox offers a handful of responses. First, he notes that there is "no indication" that the district court "applied any standard of proof" on this enhancement. Yet that lone statement, adorned with no legal authority, is insufficient to warrant review. *See Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022). Next, Cox argues that calling someone a "rat" does not rise to the level of obstruction. But we have held otherwise, and Cox does not attempt to distinguish that precedent. Cox also claims that the courthouse hallway exchange did not affect the informant's willingness to testify. An "actual effect" on a witness's testimony is not necessary, however; the enhancement applies to "attempted" obstruction. *United States v. Parsons*, 798 F. App'x 922, 928 (6th Cir. 2020). Cox characterizes his courtroom interjections as merely an "emotional reaction" to the informant's testimony. Regardless, the enhancement applies when the behavior is "reasonably construed as a threat." *French*, 976 F.3d at 749 (citation omitted). Lastly,

Cox argues that there is "no evidence" that he wrote a letter or caused a letter to be written. That claim overlooks the informant's testimony that Cox sent the letters, record evidence with which Cox does not engage.

*    *    *    *    *

We affirm.